IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Natures Mark, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>Big Lots Stores, Inc.,<br><br>  Defendant. | Case No._____<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Natures Mark, LLC ("NM") files this Original Complaint against Defendant Big Lots Stores, Inc. ("BLS").

### Nature of Action

1. This is an action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.* and Texas law for unfair competition.

### Parties

2. NM is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas.

3. BLS is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at 300 Phillipi Road, Columbus, Ohio 43228-5311. BLS may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

### Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 101 *et seq*. and 28 U.S.C. §§ 1331, 1338, and 1367.

5.      This Court has personal jurisdiction over BLS because BLS has numerous contacts with Texas, including operating in excess of 100 "bricks and mortar" stores in Texas (of which at least 8 operate in Tarrant County) and actively operating its interactive online website (see ¶¶ 15-16, infra) in Texas, and as such has systematic and continuous contacts within this District and it has taken tortious actions and entered into contracts and offers to sell and sold goods in this District and the below listed causes of action arise from such activities and contracts.  See **Exhibits F-H.**

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a) in that a substantial part of the events giving rise to the claims occurred in this District and that BLS has taken tortious actions, entered into contracts and sold goods in this District and this cause of action arises from such actions, contracts and sales.

### Factual Allegations

*NM and Its Trademarks and Copyright*

7.      NM, since at least as early as 2009, has been in the business of providing holiday specialty items to large mass market retailers (such as WalMart, Sam's Club, Costco, Lowe's, The Home Depot, Sears, K-Mart, Bed Bath & Beyond, Walgreens, Meijer, BJ's, Cracker Barrel, and Dollar General), who in turn resell such holiday specialty items nationwide via their respective "bricks and mortar" stores and their related online sales websites.  NM is particularly known to such retailers as providing Halloween and Christmas holiday specialty items for resale throughout the United States.  NM is recognized by and relied upon by retailers for its new, fresh and innovative trendsetting items.

8.      Beginning in about 2010, NM began the development of its then new MIDNIGHT MANOR COLLECTION of Halloween specialty products, including sculptures made of cold cast resin.  During the following year such development matured into a full-fledged Halloween product

line identified with NM's MIDNIGHT MANOR COLLECTION mark. Examples of NM's Halloween products associated with NM's MIDNIGHT MANOR COLLECTION are shown in the attached **Exhibit A**.

9. Since at least as early as May 26, 2011, NM has continuously used in commerce its MIDNIGHT MANOR COLLECTION mark. NM obtained U.S. Registration No. 4,369,044 (the '044 Registration) on July 16, 2013. A copy of this Registration is attached hereto as **Exhibit B**. This '044 Registration is valid and subsisting. NM has marked its Halloween products associated with the '044 Registration in a manner consistent with 15 U.S.C. §1111.

10. Collectively, the marks alleged above in Paragraphs 8 and 9 are referred to herein as "NM's Marks." NM is the owner of all right, title and interest in and to NM's Marks.

11. NM has invested hundreds of thousands of dollars in advertising, marketing, and promoting its goods under NM's Marks to its mass market retailers, who in turn do likewise to the consuming public marketplace.

12. These marketing and promotional efforts include presentations by NM's representative as well as on-site review of NM's product line at its show room in Hong Kong, as shown in the attached **Exhibit C**.

13. One of NM's products associated with NM's Marks is its "Skull Book" sculpture. This "Skull Book" sculpture was registered with the U.S. Copyright Office and given Copyright Registration Number VA 2-066-996, effective as of September 14, 2017 (the "Certificate"). A true and correct copy of the Certificate is attached hereto as **Exhibit D**.

14. The "Skull Book" sculpture was created by Frank Lutz, one of NM's owners. Since the initial publication of the "Skull Book" sculpture in 2011, NM has been and continues to be the

legal owner of all right, title and interest in and to the "Skull Book" sculpture and the copyright of said "Skull Book" sculpture.

*DEFENDANT BLS*

15. BLS is a wholly owned subsidiary of Big Lots, Inc., a publically traded company (BIG). Big Lots, Inc. is a discount retailer that had annual net sales for its last fiscal year (2016) in excess of $5.2 billion, with a $248 million operating profit and more than $150 million in net income. It has operated and currently operates more than 1400 BLS "bricks and mortar" stores throughout the United States, including in excess of 100 stores in Texas, and at least 8 stores in Tarrant County. See attached **Exhibit E** (including selected pages from the SEC 10-K Report of Big Lots, Inc., its website and the Tarrant County Appraisal District).

16. Upon information and belief, beginning in early 2017, BLS began offering for sale and selling a wide variety of Halloween related products that are promoted, advertised, marketed and sold as "MIDNIGHT MANOR COLLECTION" branded products. Such "MIDNIGHT MANOR COLLECTION" Halloween products are publicly displayed, distributed and sold at its stores as well as online at www.biglots.com. For example, **Exhibit F** shows that BLS publicly displays, distributes, offers for sale and sells its "Dripping Skull MIDNIGHT MANOR COLLECTION." **Exhibit G** shows that BLS offers for sale and sells its "MIDNIGHT MANOR Haunted Mantel COLLECTION," which includes its "Skull Light & Sound Wall Canvas," its "Skeleton Photograph Light & Sound Wall Canvas," its "Animated Piranha Skeleton" and its "Animated Mini Pup Skeleton." **Exhibit H** shows that BLS offers for sale and sells various "MIDNIGHT MANOR" branded Halloween products, including its "MIDNIGHT MANOR LED Skull in Book Tabletop Décor," its "MIDNIGHT MANOR Animated Haunted Lamp," its

"MIDNIGHT MANOR LED Skeleton Couple Cloche," its MIDNIGHT MANOR Spooky Victorian Phone with Sound" and its "MIDNIGHT MANOR Animated Haunted Movie Projector."

17. The terms "MIDNIGHT MANOR COLLECTION" and "MIDNIGHT MANOR" and its variants as used by BLS in its marketing, advertising, promoting, offering for sale and selling the aforementioned Halloween products are collectively referred to herein as the "Infringing Designations."

18. Although not affiliated with or endorsed by NM in any manner, BLS continues to use the Infringing Designations without NM's authorization or permission.

19. As noted above, BLS is a wholly owned subsidiary of the publically traded company, Big Lots, Inc. Upon information and belief, Big Lots, Inc. also wholly owns Consolidated Property Holdings, Inc. ("CPH")[**Exhibit E**, page 7]. CPH is believed to be the owner of a large portfolio of trademarks (see attached **Exhibit I**) that, in some fashion, licenses its portfolio of trademarks to BLS and other entities owned by Big Lots, Inc. Despite the large portfolio of marks and its apparent trademark sophistication, CPH has never made any effort to federally register any Infringing Designations. Upon information and belief, CPH, BLS, Big Lots, Inc. and/or other Big Lots, Inc. entities have long known of NM and NM's Marks and have chosen to intentionally ignore and disregard NM's rights in and to its NM's Marks.

20. NM has made a number of unsuccessful efforts to market its Halloween products to BLS, including face to face meetings in September 2012, July and October 2014 and in June 2015 between NM's representative and BLS representatives. At the June 2015 meeting, NM's Halloween product line was prominently displayed to BLS's representatives, including NM's Marks and its related Halloween products. This meeting was arranged for the purpose of selling

to BLS NM's Halloween products, including those with NM's Marks. No such sales to BLS were made by NM as a result of this meeting. BLS has had actual knowledge of NM, NM's Marks and its related Halloween products since at least as early as June 2015.

21. As mentioned above, BLS offers for sale and sells its "MIDNIGHT MANOR LED Skull in Book Tabletop Décor" (the "Infringing Sculpture" – see **Exhibit H** at page 2). This Halloween product was offered to BLS when it visited NM's Hong Kong show room in June 2015.

22. BLS did not license the Infringing Sculpture from NM nor did BLS have NM's permission or consent to reproduce, advertise, market, distribute and/or sell the Infringing Sculpture.

23. BLS's Infringing Sculpture is an identical copy of NM's copyrighted "Skull Book" sculpture (see **Exhibit J** for comparisons).

## Count 1

### *Federal Trademark Infringement*

### *In Violation of Lanham Act § 32 (15 U.S.C. § 1114(1))*

24. NM repeats and reasserts all allegations contained in Paragraphs 1 through 23 above as if they were stated in full herein.

25. This is a claim by NM for infringement of its trademarks.

26. NM's Marks are in full force and effect and have never been abandoned.

27. NM's Marks are inherently distinctive or, alternatively, have acquired distinctiveness through extensive promotion, advertising and industry recognition by NM and its mass marketing resellers.

28. NM's Marks are owned by NM and are widely used by NM's customers throughout the United States in their reselling of NM's Halloween products.

29. BLS's unauthorized use of NM's Marks and its Infringing Designations in order to promote its products, as alleged herein, reproduces, counterfeits, copies, colorably imitates, and constitutes infringement of NM's Marks and is likely to cause confusion and mistake in the minds of the purchasing public as to the source of the goods in violation of 15 U.S.C. § 1114(1).

30. The actions of BLS complained of herein constitute willful and intentional infringement of NM's Marks in total disregard of NM's proprietary rights. Those actions commenced and have continued in spite of BLS's knowledge that the use of any of NM's Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, was and is in direct contravention of NM's rights.

31. BLS's unauthorized use of NM's Marks is irreparably damaging to NM in the form of: (i) loss of income, sales revenue and profits; (ii) interference with NM's ability to exploit its rights; (iii) confusion in the marketplace as to the duly authorized source of the goods provided in connection with NM's Marks; and (iv) impairment of the goodwill NM has in NM's Marks. If not enjoined, NM will suffer irreparable damage to its rights in NM's Marks and its business, reputation, and goodwill.

32. NM has no adequate remedy at law.

33. NM is entitled to permanent injunctive relief against BLS under 15 U.S.C. § 1116.

34. NM is entitled to recover from BLS its profits, all damages that NM has sustained from BLS's infringement, prejudgment interest, and the costs associated with this action under 15 U.S.C. § 1117.

35. BLS's conduct renders this an exceptional case. Accordingly, NM is also entitled to recover from BLS treble damages and NM's reasonable attorney's fees under 15 U.S.C. § 1117.

## Count 2

*Federal Unfair Competition and False Designation of Origin*

*In Violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a))*

36. NM repeats and reasserts all allegations contained in Paragraphs 1 through 35 above as if they were stated in full herein.

37. NM's Marks are distinctive, because they have been used throughout the United States and are well known to the trade and to those in the market for its Halloween related goods.

38. BLS's conduct in the advertising, marketing and sales of its Halloween goods under the Infringing Designations, and BLS's use of NM's Marks, constitutes false designation of origin or sponsorship of BLS's goods and tends falsely to represent that BLS's goods originate from NM (or from the same source that markets and sells goods under NM's Marks) or that such goods of BLS have been sponsored, approved, or licensed by NM or are in some way affiliated or connected with NM, all in violation of 15 U.S.C. § 1125(a).

39. BLS's actions were done willfully in full knowledge of the falsity of such designations of origin and such descriptions or representations and of the statements of fact and with express intent to cause confusion, mislead, and deceive the purchasing public.

40. BLS's unlawful acts constitute commercial use in interstate commerce.

41. BLS's unauthorized use of NM's Marks is irreparably damaging to NM in the form of: (i) loss of income, sales revenue, and profits; (ii) interference with NM's ability to exploit its rights; (iii) confusion in the marketplace as to the duly authorized source of the goods provided in conjunction with NM's Marks; and (iv) impairment of the goodwill NM has in NM's Marks.  If not enjoined, NM will continue to suffer irreparable injury to its rights in NM's Marks and to its business, reputation and goodwill.

42.  NM has no adequate remedy at law.

43.  NM is entitled to permanent injunctive relief against BLS under 15 U.S.C. § 1116.

44.  NM is entitled to recover from BLS its profits, all damages that NM has sustained from BLS's infringement, prejudgment interest, and the costs associated with this action under 15 U.S.C. § 1117.

45.  BLS's conduct renders this an exceptional case. Accordingly, NM is also entitled to recover from BLS, treble damages and NM's reasonable attorney's fees under 15 U.S.C. § 1117.

### Count 3

*U.S. Copyright Infringement*

*In Violation of the U.S. Copyright Act, 17 U.S.C. §§ 106 and 501*

46.  NM repeats and reasserts all allegations contained in Paragraphs 1 through 45 as if they were stated in full herein.

47.  BLS infringed NM's copyright in the "Skull Book" sculpture by copying, reproducing, distributing, adapting and/or publicly displaying its Infringing Sculpture.

48.  BLS is not, and has never been, licensed or otherwise authorized to copy, reproduce, distribute, adapt and/or publicly display its Infringing Sculpture.

49.  The acts of BLS complained of herein constitute infringement of NM's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

50.  Upon information and belief, BLS has knowingly induced, participated in, aided and abetted in and profited by the illegal reproduction, importation, purchase, marketing,

advertisement, distribution and/or sale of the Infringing Sculpture by and through Big Lots Inc. and/or other Big Lots, Inc. entities.

51. Upon information and belief, BLS is vicariously and/or contributorily liable for the infringement alleged herein because BLS had the right and ability to supervise the infringing conduct and because BLS had a direct financial interest in the Infringing Sculpture.

52. Upon information and belief, the foregoing acts of infringement by BLS have been willful, intentional, and purposeful, in reckless disregard of and with indifference to NM's rights.

53. As a direct and proximate cause of the infringement by BLS of NM's copyright and its exclusive rights under copyright, NM's is entitled to damages and BLS's profits pursuant to 17 U.S.C. § 504(b) for the infringement.

54. NM is further entitled to its attorney's fees and full costs pursuant to 17 U.S.C. § 505.

55. BLS's conduct, described above, is causing, and unless enjoined and restrained by this Court, will continue to cause NM irreparable injury that cannot be fully compensated by or measured in money damages. NM has no adequate remedy at law and is entitled to injunctive relief prohibiting further BLS infringement pursuant to 19 U.S.C. § 502.

## Count 4

### *Unfair Competition Under Texas Common Law*

56. NM repeats and reasserts all allegations contained in Paragraphs 1 through 55 above as if they were stated in full herein.

57. NM is, and at all times mentioned in this Complaint has been, engaged in the business of marketing, promoting and selling its Halloween products, in association with NM's Marks. NM owns the registered "MIDNIGHT MANOR COLLECTION" mark identified herein.

58. BLS, without NM's consent, is using a reproduction, counterfeit, copy, or colorable imitation of NM's Marks in connection with selling, offering for sale, or advertising and/or marketing of its Halloween products under the Infringing Designations, including its Infringing Sculpture.

59. BLS's use of NM's Marks and/or the Infringing Designations is likely to deceive or cause confusion or mistake as to the source or origin of BLS's provided goods. As alleged in more detail above, BLS's acts constitute federal trademark infringement under Section 32 of the Lanham Act. These acts also constitute unfair competition under Texas common law.

60. Unless BLS is enjoined from the acts complained of, NM will suffer irreparable harm, for which NM has no adequate remedy at law. NM is entitled to an injunction under Texas law.

61. NM is entitled to recover from BLS its lost profits resulting from BLS's infringement.

62. Because, on information and belief, BLS's actions are tainted with fraud or malice, NM seeks exemplary damages.

## Condition Precedent

63. All conditions precedent have occurred, been met, been waived, or otherwise been satisfied.

## Jury Demand

Pursuant to Rule 38(b), F.R.C.P., NM demands a trial by jury on all issues so triable.

## Prayer for Relief

WHEREFORE, NM respectfully requests that the Court:

A. Permanently enjoin BLS from continuing to use NM's Marks (or any derivation or colorable imitation thereof), or any of them, including the Infringing Designations, in conjunction with marketing, promotion and/or sale of its Halloween products;

B. Compel BLS to destroy all marketing and promotional materials displaying, or to remove therefrom all references to, the Infringing Designations or any other term or mark confusingly similar to NM's Marks, or any of them;

C. Award NM compensatory and treble damages associated with BLS's past use and infringement of NM's Marks, including but not limited to three times BLS's profits, and three times the damages sustained by NM, as the result of BLS's conduct;

D. Adjudge BLS to have infringed upon NM's copyright in the "Skull Book" sculpture in violation of 17 U.S.C. §§ 106 and 501;

E. Permanently enjoin BLS from copying, reproducing, distributing, adapting and/or publicly displaying its Infringing Sculpture and any elements of NM's "Skull Book" sculpture;

F. Award NM its actual damages and BLS's profits, gains or advantages of any kind attributable to BLS's copyright infringement of NM's "Skull Book" sculpture;

G. Require BLS to account for all profits, income, receipts, or other benefits derived by BLS as a result of its unlawful conduct;

H. Award NM its costs and expenses incurred herein, and prejudgment interest;

I. Award NM exemplary damages;

J. Award NM its attorneys' fees in this exceptional case; and

K. Award such further and/or alternative relief this Court deems proper.

Dated: October 2, 2017.  Respectfully submitted,

*/s/Richard L. Schwartz*
Richard L. Schwartz
Texas Bar No. 17869500
rschwartz@whitakerchalk.com
Lead Counsel in Charge

Thomas F. Harkins, Jr.
Texas Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK SWINDLE
 & SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
Fax: (817) 878-0501

**Attorneys for Plaintiff
Natures Mark, LLC**